# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL ANTHONY RAMOS,<br><br>    Petitioner,<br><br>    v.<br><br>DANIEL PARAMO,<br><br>    Respondent. | Case No. 1:18-cv-00207-AWI-SAB-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

On June 26, 2014, Petitioner was convicted by a jury in the Fresno County Superior Court of: first-degree burglary (count 1); misdemeanor battery on a former cohabitant (lesser-included offense of count 2); battery causing serious bodily injury (count 3); and misdemeanor assault (lesser-included offense of count 4). (8 RT[1] 2136–39). Petitioner was sentenced to an imprisonment term of fifteen years plus twenty-five years to life. (10 RT 2718; 2 CT[2] 311–14). On November 14, 2016, the California Court of Appeal, Fifth Appellate District affirmed the

---

[1] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on February 15, 2019. (ECF No. 25).
[2] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on February 15, 2019. (ECF No. 25).

1

judgment. People v. Ramos, No. F069816, 2016 WL 6683103, at *11 (Cal. Ct. App. Nov. 14, 2016). On January 18, 2017, the California Supreme Court denied the petition for review. (LDs[3] 2, 3).

On February 9, 2018, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). On December 20, 2018, the Court granted Respondent's motion to dismiss and allowed Petitioner to proceed with the sole exhausted claim of the petition. (ECF No. 20). Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 24, 26).

## II.

## STATEMENT OF FACTS[4]

*Prosecution's Case*
In 2011 or 2012, defendant and Rita Ortega met and entered into a dating relationship. The couple lived together for a short period of time, but by May 2013, they were living apart. Defendant and Ortega dated off and on for a while until they ended their relationship indefinitely in June 2013.

On August 13, 2013, Ortega was staying with her friend, Edward Moreno, because the electricity to her house had been turned off. Ortega was in the process of having her electricity restored, and Moreno went with her to the home to make a few repairs.

At around 6:30 or 7:00 p.m., Ortega began making a pasta dinner on a propane stove. Moreno went to retrieve some tools from his vehicle when he saw a vehicle with four males drive up to the residence. Defendant got out of the vehicle, ran inside Ortega's home, and asked her who Moreno was. When Ortega responded, " 'That's Edward,' " defendant became upset and stated, " 'I'm going to go after him.' " Defendant picked up a kitchen paring knife. Ortega pleaded with defendant to put the knife down. Defendant went to the front door with the knife, but he turned around and came back to where Ortega was standing.

Defendant asked Ortega, " 'Do you know I love you?' " When Ortega did not respond, defendant slapped her twice in the face and ran out the back door. Ortega went to the front door to see where defendant went and to lock the door. Defendant began to run to the back door. Ortega tried to beat him to the back door to lock it as well, but as she rushed to the back door, she slipped, fell, and spilled the pasta she was cooking on the floor.

Defendant came inside the home and began hitting Ortega with his fists. While she was on the ground, defendant punched her in the face three times and kicked her. Defendant's blows fractured Ortega's nasal bone, leaving her nose crooked and bleeding. Ortega screamed for defendant to stop. Defendant fled through the back door.

---

[3] "LD" refers to documents lodged by Respondent on March 28, 2018 and February 15, 2019. (ECF Nos. 12, 25).
[4] The Court relies on the California Court of Appeal's November 14, 2016 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

Cathy Delgado, a neighbor of Ortega's, saw a man whom she identified as defendant, leave the rear of Ortega's property. Delgado dialed 911 at Ortega's request. Ortega was taken to the hospital for treatment of her injuries.

At trial, Moreno identified defendant as the man he observed enter Ortega's home. Moreno left when he heard Ortega and defendant yelling at each other so he did not witness the incident.

*Defense's Case*

Defendant agreed he and Ortega dated and lived together in 2011, but stated he had moved out of the couple's home in July 2012. He claimed he was still in a dating relationship with Ortega on August 13, 2013, although he stated the relationship was off and on.

Defendant testified he saw Ortega several times earlier that day at his work, and he and Ortega had made plans to see each other that evening. Defendant arrived at Ortega's home at 7:45 p.m., just in time to see Moreno leaving. Defendant asked Ortega who Moreno was, and Ortega replied it was none of defendant's business. Defendant agreed because he and Ortega were no longer together.

Defendant told Ortega he had to go back to work, but Ortega became angry and complained she had made a meal but defendant would not be there to eat it. Defendant claimed Ortega threw hot pasta sauce at him in anger. The sauce burned him and got on his clothes.

Defendant grabbed for the utensil Ortega was holding, causing her to slip and fall backward. Ortega asked for help getting up and defendant swore at her and left. Defendant denied being jealous of Moreno. He also denied hitting Ortega or entering her home with the intent to strike her.

*Rebuttal*

Officer Todd Turney testified he interviewed defendant on October 12, 2013. Defendant told Turney he had gone over to Ortega's home to "hang out" with her. When Ortega told defendant that Moreno was none of his business, he got upset and began to yell. Defendant told Turney Ortega threw the pot of sauce at him. He claimed he was trying to pull his shirt away from his body to keep the sauce from burning him when he accidentally pushed Ortega, causing her to fall.

Ramos, 2016 WL 6683103, at *1–2.

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of the Fresno County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

3

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

1    If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

///

The Court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this Court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state courts reach a decision on the merits but there is no reasoned decision, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This Court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

## IV.

## REVIEW OF EXHAUSTED CLAIM

Petitioner asserts ineffective assistance of trial counsel for failure to impeach a prosecution witness with the fact that she was on probation. (ECF No. 1 at 5).[5] Respondent

---
[5] Page numbers refer to the ECF page numbers stamped at the top of the page.

argues that the state court's rejection of this ineffective assistance of counsel claim was reasonable. (ECF No. 24 at 10).

This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned opinion. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Wilson, 138 S. Ct at 1192.

In denying Petitioner's ineffective assistance of counsel claim for failure to impeach a prosecution witness, the California Court of Appeal stated:

> **I. Trial Counsel Did Not Render Ineffective Assistance of Counsel by Failing to Impeach Delgado with the Fact She Was on Probation**
> Defendant claims trial counsel rendered ineffective assistance of counsel for failing to impeach Delgado with her probationary status. The People contend counsel's performance did not fall below an objective standard of reasonableness because Delgado's probationary status was inadmissible. They further contend even if trial counsel erred, defendant has failed to show prejudice. We agree with the People and conclude defendant's claim lacks merit.
>
> **A. Background**
> Prior to trial, the parties discussed whether Delgado could be impeached with the fact she was on probation. Trial counsel advised the court that whether a witness's probationary status was admissible depends on whether the witness has bias or had a motive to testify in a certain way as a result of that witness's status. The trial court agreed that whether a witness may be impeached with his or her probationary status depends on whether the witness has an incentive to testify in a certain way so as not to incur a violation of probation. Because Delgado was not facing any probation violation, trial counsel explained there was no basis to infer Delgado had a motive to testify in any particular manner. Thus, trial counsel declined to impeach Delgado with the fact she was on probation.
>
> At trial, Delgado testified she heard Ortega yelling, and when she asked Ortega if she needed help, Ortega asked Delgado to call the police. Delgado dialed 911 for Ortega. Delgado testified defendant was present at the time of the incident, but she could not remember many of the details surrounding the incident. While Delgado testified Ortega was injured and bleeding from her nose, she could not recall whether Ortega stated her ex-boyfriend had hit her.
>
> In his testimony, defendant acknowledged he was present at Ortega's home, and he claimed Ortega had been injured as a result of an accident. Trial counsel argued Delgado was not a witness to the physical altercation because she had arrived only after the accident occurred, and her testimony was not helpful to the jury because of her inability to recall key details about the incident.
>
> **B. Discussion**
> A defendant claiming ineffective assistance of counsel in violation of his or her Sixth Amendment right to counsel must show defense counsel's performance fell

7

below an objective standard of reasonableness under prevailing professional norms and that it is reasonably probable, but for counsel's failings, the outcome at trial would have been more favorable to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694 (*Strickland*).) The burden rests with the defendant to show inadequate or ineffective representation, and the proof " 'must be a demonstrable reality and not a speculative matter.' " (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

On appeal, we look to the record to see if there is any explanation for the challenged aspects of representation. If the reasons for trial counsel's actions are not readily apparent from the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the record discloses " ' "no conceivable tactical purpose" ' for counsel's act or omission." (*People v. Lewis* (2001) 25 Cal.4th 610, 674–675; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

In the instant case, defendant does not challenge the trial court's finding that Delgado's prior conviction was not a crime of moral turpitude. Rather, defendant argues trial counsel was incompetent for failing to impeach Delgado with the fact she was on probation as a result of her prior conviction.

In *People v. Harris* (1989) 47 Cal.3d 1047, 1091, our Supreme Court rejected the defendant's contention that evidence a witness for the prosecution was on probation for a misdemeanor offense, and was in custody for another offense at the time of trial, should have been admitted because the witness's status supplied him with a motive for testifying in favor of the prosecution. The court distinguished the case before it from *Davis v. Alaska* (1974) 415 U.S. 308, where the United States Supreme Court held the trial court's refusal to allow the defendant to cross-examine a key witness for the prosecution as to the witness's probationary status denied the defendant his right to confrontation. In *Davis*, the defendant did not have the opportunity to make an offer of proof as to the witness's potential bias or motive because a hearing pursuant to Evidence Code section 402 did not occur.

In contrast, the defendant in *Harris* failed to make an offer of proof at the Evidence Code section 402 hearing showing the witness had been offered immunity or a reward in the pending case in exchange for his testimony, or that the witness had been offered any benefits related to his probationary status. (*People v. Harris*, *supra*, 47 Cal.3d at p. 1090.) As a result, the *Harris* court concluded, "In the absence of any offer of proof by defendant that [the witness] had been threatened with probation violation, or other sanctions, or had been offered incentives for his testimony, the trial court did not abuse its discretion in sustaining the objection." (*Id.* at p. 1091.) The court made clear the confrontation clause guarantees the opportunity to cross-examine a witness, " ' "not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." ' " (*Ibid*.)

Here, trial counsel declined to impeach Delgado with the fact she was on probation, not because he misunderstood the law, as defendant asserts, but because there was no evidence Delgado's testimony was influenced by her probationary status. Defendant suggests the fact a witness is on probation at the time of trial is always relevant because it tends to show the witness's bias toward the prosecution "due to the witness' 'vulnerable status as a probationer.' " Assuming, arguendo, this is a correct statement of the law, Delgado's probationary status was only marginally relevant. Because there is no evidence

8

> her testimony may have been influenced as a result of her probationary status, counsel's decision not to impeach Delgado with the fact she was on probation was a reasonable tactical decision.
>
> Delgado was neither a key witness for the prosecution, nor did her testimony resolve the conflicting version of events offered by Ortega and defendant. Delgado did not witness the physical altercation between defendant and Ortega, and as a result, the jury could draw no inferences as to whether defendant's attack on Ortega was intentional or accidental based on her testimony. To the extent Delgado's testimony was in some way damaging to defendant's claims, trial counsel thoroughly and effectively cross-examined Delgado at trial, emphasizing the fact Delgado had a faulty memory and could not recall significant details about the incident. Thus, even assuming trial counsel erred, defendant has failed to demonstrate prejudice.

Ramos, 2016 WL 6683103, at *2–4.

### A. Strickland Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland, 466 U.S. at 687. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Richter, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." (citing Strickland, 466 U.S. at 690)). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687. A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." Id. at 689.

Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "to show

that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693). A reviewing court may review the prejudice prong first. See Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013)). When this "doubly deferential" judicial review applies, the inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

**B. Analysis**

Strickland instructs that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," 466 U.S. at 689, and the California Court of Appeal's determination that "[b]ecause there is no evidence her testimony may have been influenced as a result of her probationary status, counsel's decision not to impeach Delgado with the fact she was on probation was a reasonable tactical decision," Ramos, 2016 WL 6683103, at *4, was not objectively unreasonable.

As noted by defense counsel and the trial court, (3 RT 610–12), the instant case is distinguishable from Davis v. Alaska, 415 U.S. 308 (1974), where the Supreme Court found the

trial court erred in precluding cross-examination of a crucial prosecution witness regarding his probation status. Davis was charged with stealing a safe, which was found abandoned near the home of Richard Green, who testified at trial that he had seen Davis engaged in suspicious activity near Green's home on the day of the offense. Both at the time Green initially identified Davis and when he testified at trial, Green was on probation for burglary. The defense sought to introduce Green's probation not "as a general impeachment of Green's character as a truthful person," but to argue that Green's testimony might be an effort "to shift suspicion away from himself" as a suspect or was otherwise influenced by a "fear of possible probation revocation." Davis, 415 U.S. at 311. Here, however, there was no indication that Ms. Delgado's testimony was an effort to shift suspicion away from herself or was otherwise influenced by a fear of possible probation revocation.

Further, the California Court of Appeal reasonably concluded that Petitioner did not demonstrate "there is a reasonable probability that . . . the result of the proceeding would have been different," Strickland, 466 U.S. at 694, if trial counsel had impeached Ms. Delgado with the fact that she was on probation. Delgado had not witnessed the altercation between Petitioner and Ms. Ortega, and thus, could not corroborate either Petitioner's or Ortega's conflicting version of events. To the extent Delgado's testimony incriminated Petitioner, defense counsel was able to effectively cross-examine Delgado by highlighting her faulty memory and inability to recall important details of the incident. (5 RT 1235–37). Counsel again emphasized these issues with Delgado's testimony in his closing argument. (7 RT 1824–25).

Based on the foregoing, under AEDPA's "doubly deferential" review, Donald, 135 S. Ct. at 1376, the California Court of Appeal's decision rejecting the ineffective assistance of counsel claim for failure to impeach Ms. Delgado with her probationary status was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim, and it should be denied.

## V.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 25, 2019**

UNITED STATES MAGISTRATE JUDGE